

## UNITED STATES DISTRICT COURT
### for the
### DISTRICT OF MASSACHUSETTS

EK VENTURES I, LLC; DAVID L.
TAYLOR; DAVID L. TAYLOR AND
VIRGINIA L. TAYLOR as TRUSTEES
FOR THE TAYLOR FAMILY
REVOCABLE TRUST; and
FLEXTRONICS INTERNATIONAL LTD.,

       Plaintiffs,

  v.

JAMES R. BARTLETT and Z.B.R.
PUBLICATIONS, INC.,

       Defendants.

CIVIL ACTION

No. 03 CV 12506 WGY

### PLAINTIFFS' MEMORANDUM IN RESPONSE
### TO DEFENDANT BARTLETT'S MOTION TO DISMISS

### I. INTRODUCTION

  The Plaintiffs in the above captioned matter hereby request that the Court deny

Defendant James R. Bartlett's ("Bartlett's") Motion to Dismiss the Plaintiffs' First Amended

Complaint pursuant to F.R.C.P. 12(b)(6).  For the reasons stated below, the Plaintiffs have

ORIGINAL

alleged facts sufficient to support viable claims for each of the six causes of action set forth in the First Amended Complaint.

First, the Plaintiffs' allegations and the Agreement itself allege and support facts sufficient to give rise to claims for breach of contract, breach of warranty, and breach of the duty of good faith and fair dealing. Bartlett's contention that he was not a party to any contract with the Plaintiffs is contradicted by the terms of the Agreement itself. At a minimum, Bartlett's argument raises a fact question, and is therefore not appropriate for resolution on a motion to dismiss.

Second, Bartlett's argument that the Plaintiffs' claims should be dismissed on contractual and statutory limitations grounds fails because the Plaintiffs have alleged facts sufficient for a trier of fact to conclude that the Plaintiffs did not know and could not reasonably have known of Bartlett's various breaches and negligent misrepresentations until just recently. Dismissal of the Plaintiffs' claims on limitations grounds is inappropriate under both the discovery rule and the statutory tolling provision applicable in cases such as this involving allegations of fraudulent concealment. Mass. Gen. Laws 260 § 12.

Third, the Plaintiffs have alleged sufficient facts to give rise to a private right of action for breach of fiduciary duty. The Complaint clearly alleges facts supporting a claim that the Plaintiffs have suffered special injuries in their capacity as minority shareholders. The special injuries alleged by the Plaintiffs are separate and distinct from any derivative claims they may have.

Lastly, it is well established that a Plaintiff may alternatively plead breach of contract and unjust enrichment. FRCP 8(e)(2). Alternative pleading is particularly appropriate in cases such as this where the Defendant is challenging the existence of the contract, and the Plaintiff has

2

GROFF MURPHY
TRACHTENBERG &
EVERARD PLLC
300 EAST PINE
SEATTLE, WASHINGTON 98122
(206) 628-9500
FACSIMILE: (206) 628-9506

10585 0002 ha263601

alleged that the Defendant has unjustly received benefits from the Plaintiff. Allowing the Plaintiffs to proceed with their unjust enrichment claim is appropriate until the court has sufficient facts to determine whether the Plaintiffs have an adequate remedy at law for their damages.

## II. FACTS

This action arises out of a February 4 2000 Agreement ("Agreement") pursuant to which shareholders of Bindco Corporation ("Bindco") sold all of their stock in Bindco to a newly-formed company, Globalware Solutions, Inc. ("Globalware"). First Amended Complaint ¶ 9 – 11. The first paragraph of the Agreement identifies the parties to the Agreement as Globalware, Defendant Z.B.R. Publications, Inc. ("ZBR"), Defendant Bartlett, Bindco, and the Selling Shareholders of Bindco. The Plaintiffs, EK Ventures I, David Taylor, the Taylor Family Trust, and Flextronics International Ltd., were among the Selling Shareholders of Bindco. Id. at ¶ 10.

Bindco was a California company that provided manufacturing services to the computer industry, including digital imaging/pre-press, printing, procurement services, packaging, media replication, documentation and distribution services. ZBR was a full service printer that wished to acquire Bindco. Defendant Bartlett was the President, CEO and majority shareholder of ZBR. Id. at ¶ 12. The merger was structured so that, prior to the closing of the Agreement, Globalware acquired all of the shares of ZBR, making Bartlett the primary shareholder of Globalware. Pursuant to the terms of the Agreement, Globalware acquired all of the outstanding shares of Bindco, leaving Bartlett as the majority shareholder and CEO of the newly-merged company. Id. at ¶ 19 –20.

While Bartlett now disputes that he was a party to the Agreement, there is no dispute that the transaction that is the subject of the Agreement – i.e., the stock purchase and sale transaction

3

GROFF MURPHY
TRACHTENBERG &
EVERARD PLLC
300 EAST PINE
SEATTLE, WASHINGTON 98122
(206) 628-9500
FACSIMILE: (206) 628-9506

10585 0002 ha263601

– actually took place. It is undisputed that Globalware in fact acquired all of the outstanding stock of Bindco, and that the Selling Shareholders of Bindco received shares of Globalware in exchange. This transfer took place on February 29, 2000, the closing date identified in the Agreement. Bartlett utterly ignores this in his motion – raising the question, if there was no Agreement, why and under what circumstances did the Plaintiffs give up their shares of Bindco?

Defendant Bartlett remained as President and CEO of Globalware until the late Spring of 2003, when he was ousted and replaced by a new management team. First Amended Complaint at ¶ 19 – 27. It was around this time that the new management team learned of numerous incidents of malfeasance by Bartlett during his tenure at Globalware. Id. at ¶ 28 – 36. In the Spring of 2003, upon learning of Bartlett's malfeasance at Globalware, the Plaintiffs investigated Bartlett's actions in connection with the February 2000 Agreement, and learned that Bartlett had in fact made misrepresentations in connection with the February 2000 Agreement. Id. at ¶ 35. Shortly after learning of Mr. Bartlett's actions, Plaintiffs EK Ventures I and Taylor filed suit on December 12, 2003. Flextronics joined as a party plaintiff on January 8, 2004. See First Amended Complaint. Thus the Plaintiffs filed suit less that a year after first becoming aware of any of Bartlett's breaches and misrepresentations.

### III. STANDARD OF REVIEW

When ruling on a motion pursuant to FRCP 12(b)(6), the Court must "accept the complaint's allegations as true, indulging all reasonable inferences in favor of [the Plaintiffs]." Kiely v. Raytheon Co., 105 F.3d 734, 735 (1st Cir. 1997). The complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim that would entitle [it] to relief." Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99 (1957).

4

GROFF MURPHY
TRACHTENBERG &
EVERARD PLLC
300 EAST PINE
SEATTLE, WASHINGTON 98122
(206) 628-9500
FACSIMILE: (206) 628-9506

In ruling on a Motion to Dismiss, the Court may consider only the allegations in the Complaint. One narrow exception to this general rule allows the Court to consider a document or contract when a complaint's factual allegations are expressly linked to – and admittedly dependent upon – that document. Beddall v. State Street Bank and Trust Company, 137 F.3d 12, 17 (1st Cir. 1998). For such a document to be considered on a Motion to Dismiss, the document must be "undisputed," and no party may dispute or question the authenticity of the document. Id. at 17. The rationale for this rule is that "while a plaintiff only is obliged to make provable allegations, the court's inquiry into the viability of those allegations should not be hamstrung simply because the plaintiff fails to append to the complaint the very document upon which by her own admission the allegations rest." Id. at 17. As discussed in greater detail below, there is in fact a dispute regarding what constitutes the complete Agreement. The Plaintiffs have not yet been permitted to review the original Agreement, and have not yet had an opportunity to conduct discovery relating to the facts surrounding the execution of the Agreement, the stock transfers made as consideration for the Agreement, and Bartlett's actions in ratifying the Agreement. See accompanying Affidavit of Jerold T. Everard. Thus, the Agreement is "disputed" and should not be considered by the court as the definitive, complete document. Id.

## IV. ARGUMENT

**A.    The Plaintiffs have stated proper causes of action for breach of contract and breach of warranty.**

The Complaint alleges on its face that on February 4, 2000 Defendant Bartlett, Defendant ZBR and Globalware Solutions, Inc. entered into a Stock Purchase Agreement with Bindco ("the Agreement"). First Amended Complaint ¶ 9. The Complaint further alleges that the Plaintiffs were Selling Shareholders of Bindco and signators to the Agreement. Id. at ¶ 10. The complaint alleges facts supporting all of the elements of a valid contract, including a meeting of the minds

5

GROFF MURPHY
TRACHTENBERG &
EVERARD PLLC
300 EAST PINE
SEATTLE, WASHINGTON 98122
(206) 628-9500
FACSIMILE: (206) 628-9506

among all of the parties to the contract, including Bartlett, and substantial consideration in the

form of the transfer of all of the Plaintiffs' shares of Bindco to Globalware. At the time of the

Agreement, Bartlett was the primary shareholder of Globalware. Significantly, Bartlett does not

dispute that the share purchase that was the subject of the Agreement actually took place.

Bartlett provides no conceivable explanation as to how or why Plaintiffs' Bindco shares were

transferred if, as Bartlett now contends, there was no contract. Bartlett's current position that

ZBR was a party to the Agreement but he was not is inconsistent with the wording of the

Agreement itself. The first paragraph of the Agreement provides as follows:

> This Stock Purchase and Sale Agreement (this "Agreement") entered into as of this 4[th]
> day of February 2000 by and among Globalware Solutions, Inc., a Delaware corporation
> (the "Buyer"), Z.B.R. Publications, Inc., a Massachusetts corporation ("ZBR"), *James R.
> Bartlett, of Lynnfield, Massachusetts ("Bartlett")*, Bindco Corporation, a California
> corporation (the "Company"), and the persons identified on the signature pages hereto as
> the selling shareholders of the Company (the "Sellers").

February 4, 2000 Agreement, attached as Exhibit A to the Fitzpatrick Affidavit ("Agreement").

The signature page signed twice by James R. Bartlett states, "IN WITNESS WHEREOF,

the Buyer, ZBR, Bartlett, the Company and the Sellers have executed this Agreement as of the

day and year first above written." There are no missing signature blocks. Extensive sections of

the Agreement set forth express warranties, representations, and contractual obligations on the

part of Bartlett individually. Article IV of the Agreement, entitled "Representations and

Warranties of Buyer, ZBR and Bartlett," provides that the representations and warranties made

to the Company and to the Plaintiffs are made by "the buyer, Bartlett and ZBR, jointly and

severally." Agreement at 20 – 34. A full *fifteen* pages of the forty-four page Agreement are

dedicated to the warranties and representations made jointly by Bartlett, ZBR and the Buyer. Id.

Section 6.03 of the Agreement, entitled "Indemnification by Buyer and Bartlett," provides that

"the Buyer and Bartlett shall, jointly and severally indemnify and hold harmless the Company

6

GROFF MURPHY
TRACHTENBERG &
EVERARD PLLC
300 EAST PINE
SEATTLE, WASHINGTON 98122
(206) 628-9500
FACSIMILE: (206) 628-9506

and [the Plaintiffs] from and against any and all Damages arising directly out of any inaccuracy

of any representation, warranty, covenant, or agreement of Buyer contained in the Agreement, . .

.". Agreement at 36.

In his Memorandum, Bartlett concedes that his signature appears at least twice on the

Agreement. He argues, however, that the apparent lack of a separate signature line and signature

by Bartlett in his individual capacity makes the Plaintiffs' breach of contract and breach of

warranty claims against Bartlett "fatally flawed".[1]  Bartlett's Memorandum at 3 *citing* Marshall

v. Stratus Pharmaceuticals, Inc., 51 Mass. App. Ct. 667, 672 (2001).  Marshall, however, can be

readily distinguished from this case because in Marshall there were no indications in the contract

language that supported a claim that the individual Defendant made personal commitments in the

contract. The sole basis for the claim of personal liability in Marshall was the individual's

signature under the line entitled "for: Stratus Pharmaceuticals, Inc." Id. at 672. By contrast, the

Agreement in this case is replete with references to Bartlett as a separate party to the Agreement,

making personal representations and warranties. In Marshall, the court quoted the Restatement

(Second) of Agency § 320 on the general rule applying to agents as parties to contracts, stating,

"*unless otherwise agreed*, a person making or purporting to make a contract for a disclosed

principal does not become a party to the contract."  Id. at 673 *quoting* Restatement (Second) of

Agency § 320 (emphasis added). The Restatement goes on to clarify the circumstances under

which an agent may become party to a contract, stating:

> The inference that the agent is not a party to a contract may be overcome by proving
> other facts connected with the transaction. Thus, the fact that the wording of the

---

[1] The Defendants have asked to review the original Agreement and all accompanying schedules on file with Globalware. To date Globalware and its counsel, Nixon Peabody, have not provided the Plaintiffs with access to the complete, original Agreement purportedly on file with the company. See Affidavit of J. Everard. What constitutes the complete Agreement therefore remains in dispute.

7

GROFF MURPHY
TRACHTENBERG &
EVERARD PLLC
300 EAST PINE
SEATTLE, WASHINGTON 98122
(206) 628-9500
FACSIMILE: (206) 628-9506

> contract is such that unless the agent is a party no one is tends to indicate that the agent is a party. . . . In such cases, it is for the triers of fact to determine what the parties intended.

Restatement (Second) of Agency § 320 Comment C. The allegations in the Complaint and the Agreement itself support the conclusion that Bartlett was not merely ZBR's agent, but a party to the Agreement who signed in both his personal and corporate capacities. To the extent the Agreement contains any ambiguities on this issue, "it is for the triers of fact to determine what the parties intended." Id.

Given the fact that it is undisputed that the transaction took place, given that the Bindco shares were transferred to Globalware in accordance with the terms of the Agreement, and given the extensive individual representations and warranties made by Bartlett in the Agreement, the Plaintiffs have clearly met the standard under FRCP 12(b)(6) and should be allowed to pursue their claims for breach of contract and breach of warranty against Bartlett individually. Moreover, even if the Court were to conclude that there was no fully executed written Agreement among the parties because Bartlett failed to sign the Agreement in his personal capacity, the Court could conclude that there was an oral agreement among all the parties, or, at a minimum, a ratification of the Agreement by Bartlett through his actions in accepting consideration from the Selling Shareholders in the form of their stock. Bartlett's position that ZBR was a party to the Agreement but that he was not is untenable. There cannot be a meeting of the minds as to one party making joint representations (ZBR) and not the other (Bartlett). See Restatement (Second) of Agency § 320 Comment C (noting that "the fact that the wording of the contract is such that unless the agent is a party no one is tends to indicate that the agent is a party"). Interestingly, ZBR contends that Bartlett was in fact a party to the Agreement and that the Plaintiffs' only recourse under the Agreement is against Bartlett or Globalware, not ZBR.

8

GROFF MURPHY
TRACHTENBERG &
EVERARD PLLC
300 EAST PINE
SEATTLE, WASHINGTON 98122
(206) 628-9500
FACSIMILE: (206) 628-9506

See Memorandum in Support of ZBR's Motion to Dismiss at 7.   In summary, the competing and contradictory positions of the parties as to their respective obligations and liabilities under the Agreement raise fact questions not properly subject to resolution on a 12(b)(6) motion.

To the extent that the Court is considering granting Bartlett's motion to dismiss the breach of contract count based upon Bartlett's recent contention that he never reached an Agreement with the Plaintiffs in connection with the February 4, 2000 Agreement, the Plaintiffs request that the Court consider converting the motion to a Rule 56 motion for summary judgment and allow the Plaintiffs time to conduct discovery under Rule 56(f).   FRCP 12(b); FRCP 56(f). If the court chooses to consider the disputed Agreement accompanying Bartlett's moving papers, the Plaintiffs are entitled to gather and present their own evidence relating to the circumstances surrounding the execution of the Agreement.  Among the discovery that the Plaintiffs will need to conduct is deposing Mr. Bartlett to determine whether he ever signed the Agreement in his personal capacity, and whether he signed the Agreement in his corporate capacity knowing full well that he did not intend to honor his personal obligations under the Agreement.  The Plaintiffs will need to obtain Globalware's documents relating to the Agreement, including the original Agreement purportedly on file with the corporation, which the corporation has not made available to the Plaintiffs to date.  See accompanying Affidavit of Jerry Everard.  The Plaintiffs will also need to subpoena and depose Bartlett's attorneys, Bartlett Hackett Feinberg P.C., who drafted the Agreement documents and prepared the closing binders.  The Plaintiffs will need to subpoena and depose Bindco's attorneys and other participants in the transaction that led to the transfer of Bindco shares to Globalware.  This discovery will allow the Plaintiffs and the court to discern whether (a) Bartlett was personally a party to the Agreement; or (b) Bartlett signed the Agreement in his corporate capacity and obtained the benefits of the Agreement knowing that he

9

GROFF MURPHY
TRACHTENBERG &
EVERARD PLLC
300 EAST PINE
SEATTLE, WASHINGTON 98122
(206) 628-9500
FACSIMILE: (206) 628-9506

10585 0002 ha263601

intended not to honor his personal obligations under the Agreement. It is the Plaintiffs' belief

that Bartlett's current disavowal of his personal obligations under the Agreement provides

additional grounds for their negligent misrepresentation and unjust enrichment counts, and gives

rise to separate causes of action for fraud and violation of Mass. Gen. Laws Ch. 93A § 11. See,

e.g., Marshall v. Stratus Pharm., Inc., 749 N.E.2d 698, 707 (Mass. App. Ct. 2001).

**B.    The Plaintiffs have stated a proper cause of action for breach of the duty of good
       faith and fair dealing.**

For there to be a breach of the duty of good faith and fair dealing, there must first be a

contract from which that duty arises. Levenson v. LMI Realty Corp., 31 Mass. App. Ct. 127,

131 (1991). For the reasons stated above, the Plaintiffs have alleged facts sufficient for a trier of

fact to conclude that Bartlett was a party to a binding contract. The Plaintiffs have also alleged a

viable cause of action against Bartlett for breach of the duty of good faith and fair dealing arising

out of that contract. Anthony's Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 471 (1991)

(noting that the implied covenant of good faith and fair dealing is applicable to every contract).

In support of his motion to dismiss, Bartlett relies on case law recognizing that the duty of good

faith and fair dealing only extends "to conduct during performance of the contract, not to

conduct occurring prior to the contract's existence, such as conduct affecting contract

negotiations." Defendant's Memorandum at 6 *citing* AccuSoft Corp. v. Palo, 237 F.3d 31, 45

(1st Cir. 2001).

Contrary to Defendants' unsubstantiated assertions, the Plaintiffs' bad faith allegations

are not strictly limited to the contract negotiations. Rather, they allegations stem from actual

representations and warranties contained in the contract itself, allegations of continuous

concealment of those misrepresentations, and bad faith failure to meet the terms of the

10

GROFF MURPHY
TRACHTENBERG &
EVERARD PLLC
300 EAST PINE
SEATTLE, WASHINGTON 98122
(206) 628-9500
FACSIMILE: (206) 628-9506

Agreement.  As the Massachusetts Supreme Court recently noted in Anthony's Pier Four, "the rule is clear in Massachusetts that every contract is subject to an implied covenant of good faith and fair dealing." Anthony's Pier Four, 411 Mass at 473 *citing* Warner Ins. Co. v. Commissioner of Ins., 406 Mass. 354, 362 (1990).  The implied covenant of good faith and fair dealing provides "that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract . . ." Anthony's Pier Four, 411 Mass. At 471 – 472.  Certainly Bartlett's misrepresentations, his continuous concealment of those misrepresentations, his self-dealing, and his failure to indemnify the Plaintiffs for his actions had the result of depriving the Plaintiffs of "the fruits of the contract." Moreover, Bartlett's latest disavowal of his obligations under the Agreement is further evidence that he is continuing to deny the Plaintiffs "the fruits of the contract." The Plaintiffs' allegations of breach of the duty of good faith and fair dealing extend beyond the contract negotiations to Bartlett's affirmative duties under the contract itself, and his failure to honor those duties and meet his obligations under the contract.

**C.    Massachusetts common law and statutory tolling provisions prevent dismissal of the Plaintiffs' claims based on the contention that they are barred by the contractual limitations period.**

Bartlett argues in his motion that the Plaintiff's claims are time-barred because the parties' Agreement contains a provision that states that "all representations and warranties in this Agreement . . . shall survive until September 30, 2001." Bartlett's Memorandum at 4.  Based on this contractual provision, Bartlett contends that all claims brought after September 30, 2001 which arise out of the Agreement are barred by Agreement of the parties. As an initial matter, Bartlett's position assumes that he is a party to the written contract he now expressly disavows. Bartlett is apparently picking and choosing provisions of the Agreement that suit him, and

11

GROFF MURPHY
TRACHTENBERG &
EVERARD PLLC
300 EAST PINE
SEATTLE, WASHINGTON 98122
(206) 628-9500
FACSIMILE: (206) 628-9506

discarding other provisions that impose affirmative obligations on his part. The Plaintiffs acknowledge the existence of the Agreement, including Section 6.01. Generally speaking, parties are free to agree by contract to a shorter limitations period for the assertion of claims. Rohmtech, Inc. v. Taylor, 1997 Mass. Super Lexis 58 *36 (1997). However, this general rule does not give parties carte blanche to avoid liability by engaging in deceit and concealing information from the Plaintiffs. See Bates v. Ray, 308 Mass. 170, 31 N.E.2d 551 (1941) (holding that "attempts under the form of contract to secure total or partial immunity from liability for fraud are all under the ban of the law"). Mass. Gen. Laws ch. 260 § 12, entitled "Extension of Time in Case of Fraudulent Concealment," codifies this longstanding common law rule, and expressly extends the statute of limitations on claims such as this involving allegations of fraudulent concealment or silence in the face of a duty to disclose. It provides as follows:

> If a person liable to a personal action fraudulently conceals the cause of such action from the knowledge of the person entitled to bring it, the period prior to the discovery of his cause of action by the person so entitled shall be excluded in determining the time limit for the commencement of the action.

Mass Gen. Laws ch. 260 § 12.

Under Massachusetts law, where a fiduciary relationship exists, the failure to adequately to disclose the facts that would give rise to knowledge of a cause of action constitutes fraudulent concealment and is equivalent to fraudulent concealment for purposes of applying § 12. Demoulas v. Demoulas Supermarkets, 424 Mass. 501, 519, 677 NE2d 159 (1997) citing Puritan Medical Ctr. Inc. v. Cashman, 413 Mass. 167, 175 – 176, 596 N.E.2d 1004 (1992); Shane v. Shane, 891 F.2d 976 (1st Cir. 1989); Burns v. Massachusetts Institute of Technology, 394 F.2d 416, 419 (1st Cir. 1968); Jamesburg Corp. v. Worcester Valve Co., 443 F.2d 205 (1st Cir. 1971) (holding that mere silence can rise to the level of fraudulent concealment of a cause of action on the part of person who, because of his fiduciary position, has a duty to disclose). The Plaintiffs

12

GROFF MURPHY
TRACHTENBERG &
EVERARD PLLC
300 EAST PINE
SEATTLE, WASHINGTON 98122
(206) 628-9500
FACSIMILE: (206) 628-9506

need not specifically allege active fraud in a specific count entitled "fraud." Rather, where a fiduciary relationship exists, allegations that the fiduciary's failure adequately to disclose facts is a legitimate substitute for the active fraud required by the fraudulent concealment tolling statute. Burns, 394 F.2d at 419.

In this case, the Plaintiffs have made allegations that Bartlett, as President and CEO of Globalware as well as its majority shareholder, was in a fiduciary relationship to the Plaintiffs. First Amended Complaint at ¶ 5, 58 – 65. They have further alleged that he used his position to cover up and continuously conceal from the Plaintiffs his actions giving rise to the Plaintiffs' claims. First Amended Complaint at ¶ 33. These allegations place Plaintiffs' claims squarely within the statutory tolling provisions of § 12. Demoulas, 424 Mass. at 519.

**D.    The discovery rule applies to the Plaintiffs' negligent misrepresentation claim.**

Bartlett argues that the Plaintiffs' negligent misrepresentation count should be dismissed on the grounds that more than three years have passed since the alleged misrepresentation occurred – namely the misrepresentations and nondisclosures made at the time of the February 2000 Agreement. Bartlett's motion is based on the incorrect premise that the statute of limitations for negligent misrepresentation begins to toll from the time of the misrepresentation. This is an incorrect statement of the law. It is well established under Massachusetts law that the discovery rule applies to negligent misrepresentation claims. Hanson Housing Auth. v. Dryvit System, Inc., 29 Mass. App. Ct. 440, 445, 560 N.E.2d 1290, 1293 (1990); Friedman v. Jablonski, 371 Mass. 482, 485, 358 N.E.2d 994, 997 (1976).   The discovery rule provides that "certain causes of action based on inherently unknowable wrongs do not accrue until the plaintiff learns, or reasonably should have learned, that he has been harmed by the defendant's conduct." Hanson, 29 Mass. App. Ct. at 443.   What matters for statute of limitations purposes is not the

13

GROFF MURPHY
TRACHTENBERG &
EVERARD PLLC
300 EAST PINE
SEATTLE, WASHINGTON 98122
(206) 628-9500
FACSIMILE: (206) 628-9506

date of the misrepresentations, but the date when the Plaintiffs, "reacting to any suspicious circumstances of which [they] might have been aware, should reasonably have been put on notice that [they] may have been harmed." Rohmtech, Mass. Super. Lexis 58 (1997).

For the reasons discussed above, the Plaintiffs' claims of negligent misrepresentation fall squarely within the scope of the discovery rule. The sole remaining question, then, is, based on a review of the allegations in the Complaint alone, does it appear beyond doubt that the Plaintiffs can prove no set of facts that would lead a trier of fact to conclude that they were not reasonably on notice of Bartlett's misrepresentations until some time after December of 2000? Conley, 355 U.S. at 41. The Plaintiffs filed this action in December 2003, less than a year after they allege they first became aware of Bartlett's "improprieties and self-dealing." First Amended Complaint at ¶ 35. Paragraph 35 of the First Amended Complaint alleges that "the Plaintiffs first became aware of Bartlett's improprieties and self-dealing only *after* Mezzanine's February 2003 transaction with Globalware." Id. The complaint repeatedly alleges a pattern of concealment on the part of Bartlett that did not begin to be exposed to the Plaintiffs until Bartlett was ousted as CEO of Globalware and new management took over. Id. at 35. According to the complaint, in December of 2000, Bartlett was still CEO of Globalware, well-positioned to conceal his February 2000 misrepresentations from the Plaintiffs. The Plaintiffs also allege that Bartlett "continuously concealed from the Plaintiffs his self-dealing transactions at ZBR and Globalware." Id. at ¶ 33. Thus, the Complaint alleges that Bartlett affirmatively concealed the misrepresentations from the Plaintiffs as long as he was able – until his self-dealings were uncovered by Mezzanine and others, and he was ousted from the company in the Spring of 2003. These allegations are more than sufficient to raise a question of fact that the Plaintiffs did not know and should not reasonably have known of their claims until well after December 2000.

14

GROFF MURPHY
TRACHTENBERG &
EVERARD PLLC
300 EAST PINE
SEATTLE, WASHINGTON 98122
(206) 628-9500
FACSIMILE: (206) 628-9506

Given these allegations, it would be error to dismiss the Plaintiffs' negligent misrepresentation claim as time-barred.

**E.    The Plaintiffs have alleged sufficient facts to give rise to a private right of action for breach of fiduciary duty.**

Bartlett argues that the Plaintiffs' cause of action for Breach of Fiduciary Duty should be dismissed on the grounds that it should properly be brought as a derivative action under FRCP 23.1. Generally, where the fiduciary duty claimed by a plaintiff is a duty owed to the corporation, the plaintiff may not assert a claim as an individual, but only derivatively on behalf of the corporation. Under both Massachusetts and Delaware law[2], however, minority shareholders of corporations may bring direct causes of action for breach of fiduciary duty against majority shareholders. See, e.g., Donahue v. Rodd Electrotype Company, 367 Mass. 578, 328 N.E.2d 505 (applying Massachusetts law); Bodio v. Ellis, 401 Mass. 1, 9, 513 N.E.2d 684 (1987) (applying Massachusetts law); Bessette v. Bessette, 385 Mass. 806, 434 N.E.2d 206 (1982) (applying Massachusetts law); Malihi v. Gholizadeh, 2000 Mass. Super. Lexis 238 (Mar. 16 2000) (applying Massachusetts law); Lipton v. News Int'l Plc., 514 A.2d 1075, 1079 (Del. 1986) (applying Delaware law); Moran v. Household Int'l, Inc., 490 A.2d 1059, 1070 (1985) (applying Delaware law); Elster v. American Airlines, Inc., 100 A.2d 219, 223 (1953) (applying Delaware law).

Bartlett correctly states in his Memorandum that the distinction between derivative actions and individual actions turns on the existence of a direct or "special" injury to the party

---

[2] The Plaintiffs have analyzed the claim under both Delaware and Massachusetts law. Bartlett's briefing assumes that Delaware law applies to the breach of fiduciary duty claim on the grounds that Globalware is a Delaware corporation. Had Plaintiffs' claim been a derivative action against Globalware, Delaware law would apply. The Plaintiffs believe, however, that Massachusetts law should apply to their private right of action against Bartlett individually for breach of fiduciary duty on the grounds that Bartlett's tortious acts and breaches of fiduciary duty all took place in Massachusetts.

15

GROFF MURPHY
TRACHTENBERG &
EVERARD PLLC
300 EAST PINE
SEATTLE, WASHINGTON 98122
(206) 628-9500
FACSIMILE: (206) 628-9506

alleging the wrongdoing. See Bartlett's Memorandum in Support of Motion to Dismiss at 8 *citing* Lipton, 514 A.2d at 1079. A special injury is a wrong that "is separate and distinct from that suffered by other shareholders, . . . or a wrong involving a contractual right of a shareholder, such as the right to vote, or to assert majority control, which exists independently of any right of the corporation." Moran, 490 A.2d at 1070.

Bartlett is mistaken not in his statement of the law, but in his assumptions about the nature of the Plaintiffs' allegations giving rise to their claim for breach of fiduciary duty. While the Plaintiffs have alleged facts relating to Bartlett's concealment of his misdeeds and his "misappropriation of corporate funds," Bartlett is mistaken in his contention that these allegations form the basis of the Plaintiffs' claims for breach of fiduciary duty. The core allegations giving rise to the Plaintiffs' claim of breach of fiduciary duty are called out in the count itself, and are precisely the type of "special injuries" giving rise to a viable private right of action for breach of fiduciary duty. These allegations, which are not even mentioned in Bartlett's Motion to Dismiss, are specifically enumerated as Paragraphs 61 through 63 in Plaintiffs' breach of fiduciary duty count:

> 61. Among Bartlett's acts and omissions constituting breaches of fiduciary duty to the Plaintiffs was his handling of the February 2003 transaction between Globalware and Mezzanine and subsequent dealings with Mezzanine, in which Bartlett sought and obtained personal benefit to the direct detriment of the Plaintiffs' interests as minority shareholders of Globalware.
>
> 62. Among Bartlett's acts and omissions constituting breaches of fiduciary duty to the Plaintiffs was Bartlett's withholding and concealment of material information regarding the terms of the February 2003 transaction with Mezzanine pursuant to which Bartlett obtained a release of liability to Globalware and an indemnity from Globalware as conditions of Mezzanine's obtaining a majority interest in Globalware.
>
> 63. Among Bartlett's acts and omissions constituting breaches of fiduciary duty to the Plaintiffs was his continuous practice of improperly excluding the Plaintiffs from corporate governance and decisionmaking, failing to hold proper board meetings when required, and freezing the Plaintiff minority shareholders out of corporate decisionmaking through improper means, in direct contravention of Delaware Law,

16

GROFF MURPHY
TRACHTENBERG &
EVERARD PLLC
300 EAST PINE
SEATTLE, WASHINGTON 98122
(206) 628-9500
FACSIMILE: (206) 628-9506

Globalware's bylaws, and Bartlett's fiduciary duties to the Plaintiffs.

First Amended Complaint at ¶¶ 61 – 63.  See also Id. at ¶¶ 20 – 26 (alleging in greater detail the facts relating to Bartlett's self-dealing transaction with Mezzanine, leading to the dilution of the Plaintiffs' shares in the company).

Each of these three allegations supports a claim for an independent, private right of action separate from derivative claims.  The damage alleged by the Plaintiffs in their breach of fiduciary duty count does not harm the shareholders generally.  In fact, according to the allegations, Bartlett's actions actually benefited the majority shareholders (Bartlett, and later, Mezzanine), and caused a unique harm to the Plaintiffs in their capacity as minority shareholders.  See First Amended Complaint at ¶ 20 – 26, 65 (alleging that "Plaintiffs' damages stemming from Bartlett's breach of fiduciary duty include dilution of the value of their shares as minority shareholders to the direct benefit of Bartlett, a majority shareholder at the time of the actions giving rise to the breach").  This is precisely the type of allegation that gives rise to a private right of action for breach of fiduciary duty under both Massachusetts and Delaware law. See Lipton, 514 A.2d at 1079; Donahue, 367 Mass. at 597 (noting that shareholders in a close corporation owe each other duties of the utmost loyalty, trust and confidence).

**F.      The plaintiffs have stated a proper cause of action for unjust enrichment.**

Bartlett argues that the Plaintiffs cannot bring a cause of action for unjust enrichment because "where a contract . . . govern[s] the parties' relationship, the contract provides the measure of the plaintiff's right and no action for unjust enrichment lies."  Bartlett's Memorandum at 10 *quoting* Lupron Marketing and Sales Practices Litigation, ___ F. Supp. 2d ____, 2003 WL 22839966 *18 (D. Mass. Nov. 25 2003).  Bartlett's position is highly disingenuous given his position in this litigation – i.e., that he is not a party to any contract with

17

GROFF MURPHY
TRACHTENBERG &
EVERARD PLLC
300 EAST PINE
SEATTLE, WASHINGTON 98122
(206) 628-9500
FACSIMILE: (206) 628-9506

10585 0002 ha263601

the Plaintiffs. Bartlett attempts to dismiss the inherent inconsistency in this position in a footnote, arguing that while he disputes the existence of an agreement between himself and the plaintiffs, he "does not dispute the existence of an agreement between the plaintiff and others." Bartlett's Memorandum at 11 fn. 5. Bartlett, however, fails to articulate how that agreement provides the Plaintiffs with an adequate remedy at law, precluding the Plaintiffs' unjust enrichment claim against him personally. Instead he would like to have his cake and eat it too by asking the court to dismiss the Plaintiffs' contractual counts on the grounds that there is no contract, and to simultaneously dismiss their unjust enrichment claim on precisely the opposite grounds – i.e., that there is a contract addressing and covering all of the Plaintiffs' claims against Bartlett personally.[3] Such an result would leave the Plaintiffs without an adequate remedy – either in law or equity.

This is precisely the type of situation where alternative pleading becomes appropriate and necessary. Federal Rule 8(e)(2) expressly contemplates and sanctions alternative pleading, stating:

> A party may set forth two or more statements of a claim . . alternately or hypothetically, either in one count or defense or in separate counts or defenses. . . . A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds. . . .

FRCP 8(e)(2). Bartlett appears to seek dismissal of the Plaintiffs' Unjust Enrichment claim on the mistaken belief that a Plaintiff cannot simultaneously allege both breach of contract and unjust enrichment. It is done all the time, and in fact it would be unwise for the Plaintiffs in this case not to include an unjust enrichment claim given Bartlett's current disavowal of the parties' contract despite his receipt of the benefits stemming from that contract. FRCP 8(e)(2). Until

---

[3] Ironically, in its separate motion to dismiss, ZBR contends that the Plaintiffs have no contractual remedy against ZBR. See ZBR's Memorandum in Support of Motion to Dismiss at 7.

18

GROFF MURPHY
TRACHTENBERG &
EVERARD PLLC
300 EAST PINE
SEATTLE, WASHINGTON 98122
(206) 628-9500
FACSIMILE: (206) 628-9506

discovery is conducted on contract issues and issues relating to Bartlett's individual enrichment from his actions, Plaintiffs' unjust enrichment claim is necessarily and appropriately a part of this action.

The leading case relied on by Bartlett in support of its motion to dismiss the Plaintiffs' unjust enrichment claim, Lupron, illustrates the point well, stating:

> Where a contract does govern the parties' relationship, the contract provides the measure of the plaintiff's right and no action for unjust enrichment lies. . . . This principle is simply an extension of the fifth element of the doctrine, that where a plaintiff has an adequate remedy at law, a claim of unjust enrichment is unavailable.

The court in Lupron went on to conclude that the plaintiffs in that case had an adequate remedy at law under their RICO claims, making the dismissal of unjust enrichment claims appropriate in order to avoid "cumulative or duplicative damages". Id. This case differs from Lupron in that the Plaintiffs are not seeking "cumulative or duplicative damages." Rather, the Plaintiffs are simply reserving their right to seek an equitable remedy in the event they do not have an adequate remedy at law. FRCP 8(e)(2). If Bartlett continues to take the position that he was not party to the Agreement, despite allegations and evidence that he ratified the Agreement and unjustly benefited from the consideration provided by the Plaintiffs, then restitution for unjust enrichment is an appropriate claim. In addition, several allegations in the Complaint that give rise to the Plaintiffs' unjust enrichment claim stem from Bartlett's separate actions as a majority shareholder of Globalware rather than from his actions relating to the parties Agreement. See First Amended Complaint at ¶ 19 – 36. For example, the Plaintiffs have alleged that during Bartlett's tenure as CEO of Globalware, he engaged in self-dealing transactions with Mezzanine that resulted in the dilution of the Plaintiffs' shares in Globalware. First Amended Complaint at ¶ 26. These separate allegations give rise to a cognizable claim for unjust enrichment.

19

GROFF MURPHY
TRACHTENBERG &
EVERARD PLLC
300 EAST PINE
SEATTLE, WASHINGTON 98122
(206) 628-9500
FACSIMILE: (206) 628-9506

## V. CONCLUSION

The Plaintiffs' Complaint and the Agreement raise sufficient allegations to support potential claims for breach of contract, breach of warranty, and breach of the duty of good faith and fair dealing. Due to the Plaintiffs' allegations of Bartlett's concealment of his breaches, these claims are not barred by any contractual limitation on the time for bringing claims. Mass. Gen. Laws 260 § 12. Likewise, under the discovery rule adopted by Massachusetts' courts, the Plaintiffs have alleged facts sufficient for a trier of fact to conclude that the Plaintiffs filed suit well within three years of the accrual of their claims for negligent misrepresentation. The Plaintiffs have also alleged specific facts giving rise to a private right of action for breach of fiduciary duty. Because the Plaintiffs have alleged that they were specially harmed in their capacity as minority shareholders, their claims are not derivative and may be brought in this private lawsuit. Lastly, given clear allegations that Bartlett was unjustly enriched by his actions, combined with the uncertainty at this juncture that the Plaintiffs have a complete and adequate remedy at law, the Plaintiffs' claim for unjust enrichment should not be dismissed. For the foregoing reasons, the Plaintiffs respectfully request that the Court deny Bartlett's Motion to Dismiss pursuant to F.R.Civ.P. 12(b)(6). If the court chooses to convert Bartlett's motion on the

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

20

GROFF MURPHY
TRACHTENBERG &
EVERARD PLLC
300 EAST PINE
SEATTLE, WASHINGTON 98122
(206) 628-9500
FACSIMILE: (206) 628-9506

10585 0002 ha263601

contractual issues to a Rule 56 Motion for Summary Judgment, the Plaintiffs reserve their right

pursuant to Rule 56(f) to move to conduct discovery on issues surrounding the Agreement.

Dated this 3rd day of February, 2004.

Respectfully submitted on behalf of the
Plaintiffs, EK Ventures I, LLC; David L.
Taylor; David L. Taylor and Virginia L. Taylor
as Trustees for the Taylor Family Revocable
Trust and Flextronics International, Ltd.


_____
Jerold T. Everard, WSBA # 17142
*Admitted Pro Hac Vice*
GROFF MURPHY TRACHTENBERG &
EVERARD
300 East Pine Street
Seattle, Washington  98122
Telephone:  (206) 628-9500
Facsimile: (206) 628-9506


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on counsel for all parties via first-class
mail on February 3, 2004.

_____
Jerold T. Everard

21

GROFF MURPHY
TRACHTENBERG &
EVERARD PLLC
300 EAST PINE
SEATTLE, WASHINGTON 98122
(206) 628-9500
FACSIMILE: (206) 628-9506

10585 0002 ha263601