TRANSITIONAL EMPLOYMENT AGREEMENT

THIS TRANSITIONAL EMPLOYMENT AGREEMENT (the "Agreement") is dated as of February 12, 2003 (the "Effective Date"), and is entered into by and between GlobalWare Solutions, Inc., a Delaware corporation (formerly Z.B.R. Publications, Inc., a Massachusetts corporation) (the "Company"), and James R. Bartlett ("Bartlett").

R E C I T A L S:

WHEREAS, Bartlett and the Company are parties to an employment agreement, made as of March 31, 1992 (the "Employment Agreement"), as previously restated and amended, pursuant to which Bartlett served as Chief Executive Officer of the Company; and

WHEREAS, the Company has entered into that certain Securities Purchase Agreement, dated February 12, 2003 (the "Purchase Agreement"), pursuant to which Mezzanine Management Fund III 'A,' Mezzanine Management Fund III 'B,' Mezzanine Management Fund III 'C' and Mezzanine Management Limited (collectively, "Mezzanine") are purchasing shares of the Company's common stock; and

WHEREAS, in connection with the transactions contemplated by the Purchase Agreement, Bartlett has agreed to terminate his existing employment arrangement with the Company and enter into a transitional employment agreement with the Company; and

WHEREAS, the Company desires to retain the services of Bartlett, as described below, and Bartlett is willing to provide such services on the terms and for the consideration set out below; and

WHEREAS, Bartlett and the Company desire to embody in this Agreement the terms and conditions of Bartlett's engagement by the Company, which terms and conditions shall supersede all prior oral and written agreements, arrangements and understandings relating to Bartlett's services, including, without limitation, the Employment Agreement and any amendments or supplements thereto.

NOW, THEREFORE, in consideration of the foregoing premises, and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, it is hereby agreed as follows:

SECTION 1. ACKNOWLEDGEMENT OF TERMINATION OF EMPLOYMENT: Bartlett acknowledges that as of the Effective Date, Bartlett has resigned his position as Chief Executive Officer of the Company. Bartlett acknowledges that Bartlett is not entitled to any amounts pursuant to the terms of the Employment Agreement or any amendments or supplements thereto by virtue of such termination of employment, including but not limited to severance or other compensation expect as expressly provided herein, except for (i) $30,000 in full compensation for all accrued vacation time, which shall be paid in full to Bartlett no later than June 30, 2003; and (ii) the Company's agreement to timely pay for all outstanding amounts due on any corporate credit cards issued to Bartlett to the extent such amounts are for properly reimbursable Company expenses. Notwithstanding the foregoing, nothing contained in this

agreement may be deemed a waiver or release of Bartlett's rights of indemnification by the Company, whether arising under applicable law, under the Company's charter documents, or as approved and acknowledged by resolutions adopted by unanimous consent of the Company's board of directors dated February 11, 2003 or any other obligation or undertaking of the Company to Bartlett acknowledged therein, or the Company's obligation to continue Bartlett's coverage under its officers and directors liability insurance policy to the same extent provided to other resigning directors and officers. In connection with such rights of indemnification, this shall confirm: (i) that the Company shall defend at its expense, any claims brought against Bartlett by reason of his service as an officer and / or director of the Company, including but not limited to any claims brought by shareholders or creditors of the Company; (ii) that Bartlett shall remain covered under the Company's officers' and directors' liability insurance coverage; and (iii) that Bartlett's rights of indemnification shall survive the termination of this Agreement and shall continue for at least 30 days beyond the later to occur of (a) the expiration of any applicable statutes of limitations for all claims, or (b) until the full and final disposition of any such claims that have actually been asserted against Bartlett.

SECTION 2. ENGAGEMENT: The Company hereby agrees to engage and employ Bartlett, and Bartlett does hereby accept his employment and engagement with the Company and agrees to provide such transitional services to the Company, in such capacity as may be mutually agreed by Bartlett and the Board of Directors of the Company, for the Term (as hereinafter defined) and subject to and upon the terms and conditions as herein contained.

SECTION 3. TERM: The services to be provided by Bartlett to the Company pursuant to this Agreement shall commence on the Effective Date and shall continue until June 30, 2003 (the "Term"), and further with the understanding that the parties may by mutual written agreement further extend the Term; provided, however, that the Term and Bartlett's engagement hereunder shall automatically terminate upon Bartlett's death.

SECTION 4. DUTIES: During the Term, Bartlett shall furnish to the Company his best advice, information, judgment and knowledge with respect to the Company's business. Bartlett shall provide such services to the Company as and when the Company reasonably requests from time to time during normal business hours.

SECTION 5. COMPENSATION:

(a) During the Term, the Company shall pay Bartlett, and Bartlett hereby agrees to accept as payment for all services rendered hereunder, at his current salary of $250,000 per annum, plus health insurance and such other benefits that are provided to the Company's management employees as set forth in the Company's employee handbook.

(b) The Company shall co-operate with Bartlett to complete arrangements to transfer the titles and related finance and lease obligations to the three motor vehicles (a 1998 Lincoln Navigator, 1998 Lincoln Continental and a 1999 Ford F350) that are currently in the Company's name and used exclusively by Bartlett, and Bartlett agrees to use his best efforts to complete all arrangements for such transfers by March 25, 2003. The Company shall be responsible and shall pay for all expenses in connection with such automobiles through February 28, 2003. From and after March 1, 2003 and on the first day of each month for the remainder of

2

the Term, the Company shall pay Bartlett an automobile allowance of $897.00, and Bartlett shall be solely responsible for all applicable lease and finance payments, insurance and registration expenses, and shall indemnify the Company with respect to any such expenses or other claims associated with such vehicles.

(c) In addition, the Company acknowledges that the two Boston Red Sox season baseball tickets (account # 419656) standing in the Company's name are Bartlett's property. Pursuant to the terms of that certain Letter Agreement, dated as of February 12, 2003, between Bartlett and the Company, a copy of which is attached hereto as Exhibit B, the Company shall have the exclusive use of such tickets for the 2003 major league baseball season, including playoff games, if any. Commencing with the 2004 major league baseball season, Bartlett shall be responsible for all associated expense and shall have exclusive use of such tickets, irrespective of whether they remain in the Company's name. The Company agrees to cooperate with Bartlett in arranging to have the ownership of the tickets transferred to Bartlett, and in the event that cannot be accomplished, to change the designated mailing address to Bartlett's residence. The Company shall have no affirmative obligation to pay for the tickets, or to forward any correspondence, notices, invoices or other materials received in connection with such tickets to Bartlett.

(d) Attached hereto as Exhibit A is a schedule (the "Insurance Policy Schedule") of any and all insurance policies on Bartlett's life, the premiums of which were paid, in part or whole at any time, by the Company. Bartlett hereby represents and warrants to the Company that, to the best of his knowledge and belief, the Insurance Policy Schedule is true, accurate and complete. Bartlett hereby acknowledges that the approximately $205,000 cash surrender value under Massachusetts Mutual life insurance policy (#7491925), No. 5 on the Insurance Policy Schedule, which is owned by the Company is the property of the Company, and Bartlett has arranged through his insurance agent, J.F. Blum Associates, to have a check issued to the Company, on or prior to March 30, 2003, for the full cash surrender amount of such policy. The Company hereby acknowledges that the life insurance policies that are indicated on the Insurance Policy Schedule as owned by Bartlett or Bartlett family trusts shall remain Bartlett's (or such entities') property, and Bartlett shall have no obligation to the Company with respect to such policies. The Company and Bartlett hereby agree to discuss in good faith whether the life insurance policy listed as No. 3 on the Insurance Policy Schedule is the property of Bartlett or the Company. Bartlett hereby represents that to the extent the Company paid any premiums on any policies owned by Bartlett or his family, such premium payments were properly made as part of his executive compensation under his existing employment agreements, which permitted the Company's discretionary payment of "other compensation or benefit" in addition to his base salary, and that no cash surrender value of any policies owned by Bartlett have ever been reflected on the Company's books, nor were the premium payments ever reflected as an obligation or amount due the Company from Bartlett.

(e) Bartlett shall be entitled to be reimbursed for expenses incurred up through the date of this Agreement in accordance with the Company's normal reimbursement policy. During the Term, the Company will reimburse Bartlett in accordance with its normal reimbursement policy for reasonable travel and other expenses incurred by Bartlett in carrying out Bartlett's duties under this Agreement.

SECTION 6. CONFIDENTIALITY

(a) CONFIDENTIALITY: "Confidential Information" means secret or confidential information, knowledge or data relating to the Company and its respective businesses obtained by Bartlett during the course of his employment with the Company and during the Term, but does not include information that: (i) is or later becomes part of the public domain through no fault of Bartlett; (ii) is lawfully received by Bartlett from a third party having no obligations of confidentiality to the Company; or (iii) is required to be disclosed by order of a governmental agency or by a court of competent jurisdiction. Except as specifically authorized by an authorized officer of the Company or by written Company policies, Bartlett will not, either during or for a period of at least two years after the term of this Agreement, use or disclose Confidential Information to any person who is not an employee of the Company, except as necessary to perform his duties under this Agreement. Upon termination of this Agreement, Bartlett will promptly deliver to the Company all Confidential Information in his possession.

(b) NON-DISPARAGEMENT  Bartlett shall refrain from making any false, disparaging or derogatory statements to any media outlet, industry group, financial institution or current or former employee, consultant, client or customer of the Company regarding the Company or its directors, officers, employees, agents or representatives or about the business affairs and condition (financial or otherwise) of the Company. The executive officers of the Company shall refrain from making any false, disparaging or derogatory statements to any media outlet, industry group, financial institution or current or former employee, consultant, client or customer of the Company regarding Bartlett.

(c) SURVIVAL: The provisions of this Section 6 shall survive the termination of this Agreement.

(d) INJUNCTION: It is recognized and hereby acknowledged by the parties hereto that a breach by Bartlett of the covenant contained in this Section 6 will cause irreparable harm and damage to the Company, the monetary amount of which may be virtually impossible to ascertain. As a result, Bartlett recognizes and hereby acknowledges that the Company shall be entitled to an injunction from any court of competent jurisdiction enjoining and restraining any violation of any or all of the covenants contained in this Section 6 by Bartlett or any of his affiliates, associates, partners or agents, either directly or indirectly, and that such right to injunction shall be cumulative and in addition to whatever other remedies the Company may possess at law or in equity.

SECTION 7. NON-COMPETITION, TRADE SECRETS, ETC.

(a) During the Term and for a period of one (1) year after the termination of his employment with the Company for any reason whatsoever (the "Restricted Period"), Bartlett shall not, directly or indirectly, be (as a principal, partner, director, officer, agent, employee, consultant or otherwise) engaged in or financially interested in any business which is engaged in competition with the Company in the computer hardware/software documentation, or financial or educational printing business, or any other businesses the Company is engaged in at the time of the termination of Bartlett's employment, in any State, country or other jurisdiction in which the

4

Company is engaged in business or have plans to engage in business at the time of such termination (each, a "Company Jurisdiction"), nor shall Bartlett solicit or attempt to solicit in any Company Jurisdiction any customer or supplier transacting business with the Company at any time during the eighteen (18) months preceding Bartlett's termination in connection with any such business. Nothing in the foregoing sentence shall be deemed, however, to prevent Bartlett from owning securities of the Company or of any publicly owned corporation or other entity which is a reporting company under the Securities Exchange Act of 1934, as amended provided that such publicly owned corporation or other entity does not compete with the Company and Bartlett's ownership of such securities does not materially impair the performance of his obligations under this agreement. Bartlett's obligations under this Section 7 shall become null and void if the Company fails to comply in all material respects with its obligations under this Agreement, including without limitation the Company's obligations set forth in Sections 1 and 5 hereof.

(b)     During the Restricted Period, Bartlett shall not induce or attempt to influence any employee of the Company to terminate his or her employment with the Company nor shall Bartlett use for his personal benefit, or disclose, communicate or divulge to, or use for the direct or indirect benefit of any person, firm, association or entity other than the Company, any material referred to in Section 6 above or any information regarding the business methods, business policies, procedures, techniques, research or development projects or results, trade secrets, or other knowledge or processes of or developed by the Company or any names and addresses of customers or clients or any other data on or relating to past, present or prospective customers or clients or any other confidential information relating to or dealing with the business operations or activities of the Company, made known to Bartlett or learned or acquired by Bartlett while in the course of his employment with the Company. Notwithstanding the foregoing, the provisions of this Section 7(b) shall not apply to any information generally available or otherwise disseminated to the public.

(c)     Bartlett acknowledges that in view of the nature of the business in which the Company is engaged, the restrictions contained in the foregoing subparagraphs (a) and (b) are reasonable and necessary in order to protect the legitimate interests of the Company. Bartlett further acknowledges that the Company would not enter into this Agreement without Bartlett agreeing to be bound by the restrictions contained in such subparagraphs, and that any violation thereof would result in irreparable injuries to the Company and Bartlett therefore acknowledges that, in the event of his violation of any of these restrictions, the Company shall be entitled to obtain from any court of competent jurisdiction preliminary and permanent injunctive relief as well as damages and an equitable accounting of all earnings, profits and other benefits arising from such violation (whether earned by Bartlett or any other person or entity), which rights shall be cumulative and in addition to any other rights or remedies to which the Company may be entitled.

(d)     For the purposes of Sections 6 and 7 of this Agreement, all references to the Company shall be deemed to include any parent, subsidiary or affiliate of the Company and any successor to the Company regardless of its form or business structure.

(e)     If any court of competent jurisdiction shall at any time deem the duration or scope of any of the provisions of this Section 7 unenforceable, the other provisions of this

Section 7 shall nevertheless stand and the duration and/or scope set forth herein shall be deemed to be the longest period and/or broadest area permissible by law under the circumstances, and the parties hereto agree that such court shall reduce the time period and/or scope to such permissible duration or size.

(f)     If Bartlett violates any of the restrictions contained in the foregoing subparagraphs (a) or (b), the restrictive period shall not run in favor of Bartlett, and shall be tolled, from the time of the commencement of any such violation until such time as such violation shall be cured by Bartlett to the satisfaction of the Company.

SECTION 8. BARTLETT REPRESENTATIONS: Bartlett hereby represents to the Company that he is aware of no legal obligation inconsistent with the terms of this Agreement or with Bartlett's undertaking of his engagement with the Company.

SECTION 9. SUCCESSORSHIP: This Agreement shall inure to the benefit of and be binding upon the Company, its successors and assigns, including any successor by operation of law or otherwise; and as used herein, the term "Company" shall include such successors or assigns, and any subsidiary or affiliate of the Company. The services to be provided by Bartlett under this Agreement are personal to the Company and shall not be assignable (by operation of law or otherwise) by Bartlett without the prior written consent of the Company. Any attempted assignment by Bartlett in contravention of this Section 8 shall be void *ab initio*.

SECTION 10. ENTIRE AGREEMENT: This Agreement together with a certain side letter from the Company to Bartlett of even date herewith contains the entire Agreement of the parties relating to Bartlett's service to the Company and supersedes all prior oral or written agreements relating to the subject matter hereof, including, without limitation, the Employment Agreement. No modification of this Agreement shall be valid unless made in writing and signed by the parties hereto.

SECTION 11. NOTICE: Any notice or request required or permitted under this Agreement shall be in writing and given or made by postage paid, registered or certified mail, return receipt requested, addressed to the Company at its then principal place of business, or Bartlett at his address last given to the Company, or to either party hereto at such other address last given to the Company, or to either party hereto at such other address or addresses as such party may from time to time specify for such purposes in a notice similarly given to the other party.

SECTION 12. APPLICABLE LAW: THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE (WITHOUT GIVING EFFECT TO THE CHOICE OF LAW PRINCIPLES THEREOF) APPLICABLE TO CONTRACTS MADE AND TO BE PERFORMED ENTIRELY WITHIN SUCH STATE.

[SIGNATURE PAGE FOLLOWS]

SECTION 13. ACKNOWLEDGMENT: IN WITNESS WHEREOF, the Company has caused this Agreement to be executed by its officer thereunder duly authorized, and Bartlett has hereunder set his hand, all as of the day and year first written above.

GLOBALWARE SOLUTIONS, INC.

By: _____
Name:
Title:

_____
JAMES R. BARTLETT

SECTION 13. ACKNOWLEDGMENT: IN WITNESS WHEREOF, the Company has caused this Agreement to be executed by its officer thereunder duly authorized, and Bartlett has hereunder set his hand, all as of the day and year first written above.

GLOBALWARE SOLUTIONS, INC.

By: _____
Name:
Title:

_____
JAMES R. BARTLETT

**EXHIBIT A**

Exhibit A

02/13/2003

This show all policies and premiums

## JAMES R. BARTLETT - LIFE INSURANCE POLICIES

| No. | INSURED | POLICY # INSURANCE CO. | OWNER | BENEFICIARY | FACE AMOUNT | TYPE | ISSUE DATE | CSV 12/31/2003 | PREMIUM PMT MODE |
|---|---|---|---|---|---|---|---|---|---|
| 1 | James R. Bartlett | Massmutual 6 722 761 | James R. Bartlett | Cynthia Bartlett | $119,500.00 | WL | 6/01/83 | $12,200.00 | $2,245.54 Annual |
| 2 | James R. Bartlett | Massmutual 6 805 632 | James R. Bartlett | Cynthia Bartlett | $164,500.00 | WL | 12/15/83 | $4,841.48 | $1,595.36 Semi-Annual |
| 3 | James R. Bartlett | Massmutual 8749398 | James R. Bartlett Irr Life Ins Trust dtd 6-28-94 | James R. Bartlett Irr Life Ins Trust dtd 6-28-94 | $1,000,000.00 | WL | 11/04/91 | $209,000 | $1,924.99 Mthly Invoice |
| 4 | James R. Bartlett | Lincoln Benefit 100760749 | James R. Bartlett | Economic Stabilization Trust | $400,000.00 | 7 Yr term | 3/27/97 | | $1,455.00 |
| 5 | James R. Bartlett | Mass Mutual 7491925 | Globalware Solutions | Globalware Solutions | $1,020,000.00 | WL | 12/16/88 | $191,000.00 | $1,756.45 Monthly Invoice |
| 6 | James Bartlett | Sun Life Canada 020061714 | Split Dollar James R. Bartlett Irr Life Ins Trust dtd 6-28-94 Assigned to Globalware | Split Dollar Cynthia Bartlett GWS for cumulative premiums JB Trust for the Balance | $2,000,000.00 | UL | 11/3/2000 | — | $29,528.97 Annual |
| 7 | James Bartlett | Banner Life 17B507760 | Globalware | Globalware Assigned to Mezzanine Mgmt | $2,000,000.00 | Term | 11/29/2001 | Expires 2011 | $4,170.00 Annual |
| 8 | James Bartlett | Lincoln Benefit 01N1142425 | Split Dollar James R. Bartlett Irr Life Ins Trust dtd 6-28-94 Assigned to Globalware | GWS for cumulative premiums JB Trust for the Balance | $2,000,000.00 | UL | 12/19/2002 | | $30,568.00 Annual |

**EXHIBIT B**

Side Letter Agreement

(See Tab 21)